# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 13-cv-3439 (JFB)(WDW)
_____

TIANBO HUANG,

Plaintiff,

VERSUS

ITV MEDIA, INC., ITV MEDIA (HONG KONG), LTD., ITV.CN, INC., UTSTARCOM, INC., AND SONG LIN,

Defendants.

_____

**MEMORANDUM AND ORDER**
April 8, 2014
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Tianbo Huang ("plaintiff") brings this action arising out of his employment relationship with iTV Media and its President and Chief Executive Officer, Song Lin ("Lin"). Lin also controls two corporate relatives of iTV Media, called iTV(Hong Kong) ("iTV (HK)") and iTV.cn, both of which plaintiff named as defendants in this action. Together, all three iTV entities are known as the "iTV Group." The final named defendant is UTSTARCOM ("UTS"), a separate corporation that plaintiff alleges is a majority shareholder in iTV Media.

Plaintiff asserts eight causes of action against all defendants: (1) breach of contract, (2) unjust enrichment, (3) fraud, (4) negligent misrepresentation, (5) breach of the duty of good faith and fair dealing, (6) intentional infliction of emotional distress,

(7) record-keeping violations of section 195 of the New York Labor Law ("NYLL"), and (8) unlawful deduction of wages under section 193 of the NYLL.

The iTV Group (including Lin) and UTS each move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's complaint. Both motions argue that plaintiff has not pled facts sufficient to support the broad assertion that defendants were all "alter-egos" of each other, thus making each liable on every count. The motions also share two more specific arguments: first, that the unjust enrichment and breach of the duty of good faith and fair dealing counts are duplicative; and second, that the fraud, negligent misrepresentation, and intentional infliction of emotional distress counts fail to state claims for relief.

Separately, Lin and the iTV Group move to dismiss the claims against iTV(HK) and

Lin for lack of personal jurisdiction, and UTS moves to dismiss the NYLL claims because it did not employ plaintiff.[1]

In short, the Court grants the motion to dismiss the claims against UTS, because plaintiff has not pled sufficient facts to show that UTS is an alter ego of iTV Media, but plaintiff is granted leave to re-plead additional facts concerning UTS.[2] The motion to dismiss the claims against Lin and the iTV Group is granted with respect to the negligent misrepresentation and intentional infliction of emotional distress claims, and the claim for punitive damages, and is otherwise denied. However, the Court also will allow leave to re-plead the intentional infliction of emotional distress claim and/or the claim for punitive damages.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the amended complaint, including attached documents, and they are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

Plaintiff has worked in the Internet television media industry for more than ten years. (Am. Compl. ¶ 17.) At some point, he was approached by Lin and Jingshan Sun ("Sun") about working for the iTV Group. (*Id.* ¶ 20.) Lin, Sun, and plaintiff met in December 2010 to discuss plaintiff's possible employment, which would include

management of a new entity called iTV.cn. (*Id.* ¶¶ 21-22.) This meeting occurred in Plainview, NY. (*Id.*)

Additional meetings occurred in China during the following spring. (*Id.* ¶¶ 25-27.) In April 2011, plaintiff left his previous job and accepted an offer to work for the iTV Group. (*Id.* ¶ 31.) Plaintiff signed an employment contract that was also executed by Lin on behalf of iTV Media. (*Id.* ¶¶ 33, 36.)

The contract contains several terms relevant to this motion. It defines plaintiff's compensation as $25,000 per month, with the possibility of performance bonuses, and it assigns him a certain number of shares of stock options, to be paid in installments. (Ex. A to Am. Compl. ¶ 5.) It also grants him a signing bonus, various benefits, and matching payments of 5% of his base salary into a 401(k) Savings and Investment Plan. (*Id.*) Plaintiff's working hours are "40 hours a week." (*Id.* ¶ 6.) The contract also provides that "[t]he federal or state courts located in the State of New York shall have jurisdiction" over any disputes. (*Id.* ¶ 10.)

Plaintiff began working for iTV Media on May 1, 2011, in Melville, New York. (Am. Compl. ¶ 35.) Within a short time, plaintiff found the work environment to be "hostile and intimidating." (*Id.* at ¶ 38.) Lin insulted plaintiff and continued to manage international operations that plaintiff believed had been designated his responsibility under the contract. (*Id.* ¶¶ 37-38.) iTV Media failed to pay plaintiff his full wages on time, and he was forced to work without compensation beyond the 40-hour workweek defined in his employment contract. (*Id.* ¶¶ 38-39.) Plaintiff's protests were met with more insults and reminders that he was building equity through stock options, but Lin refused to provide a formal

---

[1] Lin and the iTV Group have not moved to dismiss the two NYLL counts.

[2] At oral argument, counsel for plaintiff represented that he knew of additional facts concerning UTS which would support a finding of alter ego liability. Accordingly, plaintiff is granted leave to re-plead those facts.

acknowledgement that plaintiff's stock options had vested. (*Id*. ¶¶ 41-46.)

In November 2012, plaintiff received notice that his employment was being terminated, effective immediately. (*Id*. ¶ 51.) Plaintiff contends that his termination was solely the result of his demands for timely and full compensation and his resistance to efforts by Lin to acquire illegal content for iTV.cn. (*Id*. ¶¶ 47-52.)

Overall, plaintiff claims that nearly half of his wages were never paid, that he was never compensated for overtime, that he never received acknowledgement of his vested stock options, and that he was denied the severance package defined in his employment contract. (*Id*. ¶¶ 56-62; Ex. A to Am. Compl. ¶ 7).

### B. Procedural History

Plaintiff filed the original Complaint in this case on June 14, 2013, and an Amended Complaint on September 12, 2013. On October 11, 2013, defendants filed their motions to dismiss. Plaintiff responded in opposition on October 25, 2013 and November 1, 2013, and defendants replied on November 8 and 11, 2013. The Court heard oral argument on November 14, 2013.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to

raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, reaffirming two important considerations for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

## III. DISCUSSION

The first question is whether personal jurisdiction exists over Lin and iTV(HK). Concluding that it does, the Court next turns to plaintiff's allegation that defendants are all alter egos of each other, and finally, to the arguments concerning the dismissal of particular causes of action.

A.  Personal Jurisdiction

Lin and the iTV Group argue that this Court lacks personal jurisdiction over Lin and iTV(HK) because they are not subject to general jurisdiction in New York, and because the complaint does not allege sufficient facts to subject them to specific jurisdiction.  In response, plaintiff argues that specific jurisdiction exists over both Lin and iTV(HK), and the Court agrees.

It is well settled that "[i]n diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court must then decide whether such exercise comports with the requisites of due process." *Id.* Thus, the district court should engage in a two-part analysis in resolving personal jurisdiction issues: (1) whether New York law would confer jurisdiction by New York courts over the defendant, and (2) whether the exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302. Here, plaintiff relies on Section 302, arguing that Lin and iTV(HK) have sufficient business contacts with New York to create long-arm, or "specific" jurisdiction.  "New York courts evaluating specific jurisdiction . . . . must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); N.Y. C.P.L.R. § 302(a).

The complaint alleges several examples of Lin transacting business in New York: he initially negotiated the employment contract with plaintiff there; he authorized plaintiff to begin to work for him in office space there; and he forced plaintiff to work beyond his contract there.  (Am. Compl. ¶¶ 21, 35, 38). At the pleading stage, these are legally sufficient allegations that Lin transacted business in New York, giving rise to these causes of action.  *See SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 549 (S.D.N.Y. 2003) (noting that preliminary contract negotiations are transactions under New York's long-arm statute) (citation omitted); *Daou v. Early Advantage, LLC*, 410 F. Supp. 2d 82, 92 (N.D.N.Y. 2006) (determining that personal jurisdiction existed based on plaintiff's employment in New York); *Fischbarg v. Doucet*, 832 N.Y.S.2d 164, 167 (N.Y. App. Div. 2007), *aff'd by* 9 N.Y.3d 375 (2007) (holding that defendants' calls and emails to plaintiff in New York were transactions giving rise to the cause of action). Therefore, the Court concludes that the complaint and the attached contract sufficiently establish personal jurisdiction over Lin at this stage.

Likewise, the complaint sufficiently alleges that the Court has personal jurisdiction over iTV(HK).  As is discussed below, the allegations support a plausible claim that iTV(HK) is an alter ego of iTV Media, and "'alter egos are treated as one

entity' for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 142-143 (2d Cir. 1991)). Furthermore, the complaint alleges that Lin uses iTV(HK) as the funding source for the entire iTV Group. (*Id.* ¶ 68.) Specifically, the complaint states that iTV(HK) transferred between $200,000 and $500,000 each quarter to iTV.cn—the entity employing plaintiff in New York. (*Id.* ¶ 70.) These transfers were allegedly the only source of funds available for iTV.cn to meet its financial needs (*id.*), which included the payment of plaintiff's initial salary (*id.* ¶ 36). Thus, the allegations support an inference that iTV(HK) paid plaintiff's salary for work in New York. That conclusion is further supported by the allegation that, when plaintiff complained of being underpaid, Lin responded that he would be paid from funds held by iTV(HK). (*Id.* ¶ 43.) Lin is the President of iTV(HK) and all iTV entities (*id.* ¶ 69), and his alleged use of iTV(HK) in this manner gives the Court personal jurisdiction over both him and iTV(HK).[3]

---

[3] The Court notes its responsibility to consider whether it has personal jurisdiction for each separate claim. *See Interface Biomedical Labs., Corp. v. Axiom Med., Inc.*, 600 F. Supp. 731, 734 (S.D.N.Y. 2003). This is because the "transacting business" prong of Section 302(a)(1) has an "arising under" component, requiring that the claim asserted *arise from* the defendant's New York business activities. *See*, *e.g.*, *SAS Grp.*, 245 F. Supp. 2d at 550. "A plaintiff's cause of action 'arises from' a defendant's New York activities when those activities are 'substantially proximate to the allegedly unlawful acts.'" *Id.* (quoting *Xedit Corp. v. Harvel Indus. Corp.*, 456 F. Supp. 725, 729 (S.D.N.Y. 1978)). Such a determination "'is necessarily one of degree, informed by considerations of public policy and fundamental fairness.'" *Id.* (quoting *Xedit Corp.*, 456 F. Supp. at 729). The Court has considered each claim separately and concludes that there is a high degree of interrelatedness between the alleged

Having concluded that there is an adequate basis for the exercise of specific jurisdiction over Lin and iTV(HK), the Court must next determine whether the exercise of jurisdiction over them comports with the Due Process Clause of the Fourteenth Amendment, which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there."). There are two aspects of the due process analysis: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).

Although the constitutional due process issue is a separate question, "[o]rdinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997). Here, Lin and iTV(HK) had sufficient

---

conduct and each cause of action, such that the claims for breach of contract, unjust enrichment, fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, and violation of New York Labor Law all allegedly *arose from* Lin's alleged failure to pay plaintiff what he was promised. In addition, the claim for intentional infliction of emotional distress adequately pleads specific jurisdiction at this stage because Lin's treatment of plaintiff occurred during plaintiff's employment in New York. (*See* Am. Compl. ¶¶ 35, 38-39.); *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 206 (S.D.N.Y. 2002) (finding that tort claims arose from transaction of business in New York in the context of a contractual relationship).

minimum contacts with New York that the exercise of personal jurisdiction over them satisfies due process for the same reasons discussed above: Lin negotiated with plaintiff, put him to work there, and allegedly failed to compensate him, all in New York. *See Chloe*, 616 F.3d at 171 (concluding that "assertion of personal jurisdiction over [defendant] comports with due process for the same reasons that it satisfies New York's long-arm statute").

With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed himself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause." *Id.* at 172-73 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). As set forth by the Supreme Court, courts should consider five factors when determining the reasonableness of a particular exercise of jurisdiction:

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It also must weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus.*, 480 U.S. at 113 (citation and internal quotation marks omitted). "Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between.'" *Gucci Am., Inc. v. Frontline Processing*

*Corp.*, 721 F. Supp. 2d 228, 246 (S.D.N.Y. 2010) (quoting *Metro. Life Ins.*, 84 F.3d at 575).

Although there may be some burden on Lin in defending himself in New York, his choice to conduct business there suggests that it is not an unreasonable burden. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." (internal quotation marks and citation omitted)). The second factor favors keeping New York as the forum state, since "a state frequently has a manifest interest in providing effective means of redress for its residents," *Chloe*, 616 F.3d at 173 (internal quotation marks and citation omitted), as does the third factor, since plaintiff is located there. The fourth and fifth factors appear to be neutral in this case.

Having considered these factors, the Court concludes that this is not one of the few and far between cases in which the exercise of jurisdiction would be unreasonable despite the fact that plaintiff has satisfied the state-law and minimum contacts analyses. In short, the exercise of personal jurisdiction over Lin and iTV(HK) "comports with traditional notions of fair play and substantial justice, such that it satisfies the reasonableness inquiry of the Due Process Clause." *Chloe*, 616 F.3d at 173 (citation and internal quotation marks omitted).

### B. Alter Ego

Plaintiff's argument that defendants are all alter egos of each other fails to specify a starting point for the Court's analysis. In other words, plaintiff does not state *which* of the multiple corporate veils he seeks to pierce in pursuit of alter egos. It appears that the Complaint focuses on wrongdoing by iTV Media, and at oral argument, counsel for plaintiff conceded that iTV Media is the appropriate starting point, as it was the party to plaintiff's employment contract. Thus, the following discussion will consider whether the remaining corporate defendants are iTV Media's alter egos.

When a plaintiff pursues an alter-ego theory, it presents a federal court sitting in diversity with a choice-of-law question. *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456-57 (2d Cir. 1995). "Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000). When New York courts are asked to pierce the corporate veil against a defendant's alter egos, they look to the law of the state where the defendant is incorporated. *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). "Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991).

iTV Media is incorporated in the British Virgin Islands, and thus the question whether any other defendant is its alter ego

is one of English law.[4] "[T]he proper determination of foreign law can be a complicated task." *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 586 (2d Cir. 2005). To determine what English law requires in this case, "the court may consider any relevant material or source . . . whether or not submitted by a party." Fed. R. Civ. P. 44.1. The analysis of another American court applying English law is a particularly relevant source. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 291 (S.D.N.Y. 2008); *In re Optimal U.S. Litig.*, No. 10-cv-4095, 2011 WL 4908745, at *3 n.31 (S.D.N.Y. Oct. 14, 2011).

In *In re Tyson*, 433 B.R. 68, 86 (S.D.N.Y. 2010), Judge Cote surveyed English law on this same question, and her "general conclusions about the current state of English veil-piercing law" have since guided courts in this and other circuits.[5]

---

[4] Plaintiff has argued in the alternative that New York law should apply to the alter ego question, not because New York has any greater interest than the British Virgin Islands, but because, in plaintiff's view, New York and English law are the same in this area. *See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict. . . . In the absence of substantive difference . . . New York courts are free to apply [New York law]."). As the Court's discussion of English law demonstrates, however, plaintiff is incorrect. The temporal requirement most clearly distinguishes New York from English law. *See also Optimal*, 2011 WL 4908745, at *3 (applying English law in the absence of contrary Bahamian authority and noting that "[a]lthough New York and Bahamian corporate veil-piercing laws are largely similar, they depart in one determinative aspect—Bahamian law requires that the defendant incurs a liability to plaintiffs *before* creating a fraudulent shell entity").

[5] Though both parties have also cited *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05-0553(MHP), 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) for its general statements of English law, the Court finds that the

*See, e.g.*, *FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc.*, 794 F. Supp. 2d 449, 459 (S.D.N.Y. 2012); *Brainware, Inc. v. Scan-Optics, Ltd.*, No. 3:11-cv-755, 2012 WL 1999549, at *5 (E.D. Va. May 9, 2012); *Optimal*, 2011 WL 4908745, at n.32. Having reviewed *Tyson*, the English decisions on which it is based, and the American decisions which have followed it, this Court agrees that Judge Cote has accurately and succinctly summarized English veil-piercing law.[6]

*Tyson* is particularly instructive because, "[u]nlike American law, English case law does not provide an enumerated set of factors that a court can evaluate in deciding whether to lift the corporate veil." *United Trade Assocs., Ltd. v. Dickens & Matson (USA) Ltd., Inc.*, 848 F. Supp. 751, 760 (E.D. Mich. 1994). Nonetheless, three principles emerge from the thorough analysis in *Tyson*: (1) plaintiffs seeking to pierce the corporate veil under English law must allege and prove that defendants misused a corporate façade; (2) the misuse must have occurred after the liability arose ("the temporal requirement"); and (3) there is a preference under English law for fraud claims directly against individual defendants. Examining the complaint in light of these principles, plaintiff has sufficiently pled that iTV(HK) and iTV.cn are alter egos of iTV Media, but he has not

---

discussion in *Tyson* is far more thorough. In any event, *Sunnyside* is not inconsistent with *Tyson*.

[6] The Court reviewed the following cases cited in *Tyson* or by defendants: *Faiza Ben Hashem v. Abdulhadi Ali Shayif*, [2008] EWHC (Fam.) 2380; *Kensington Int'l Ltd. v. Congo*, [2005] EWHC 2684 (Comm.); *Ord v. Belhaven Pubs Ltd.*, [1998] 2 BCLC 447, [1998] BCC 607; *Re Polly Peck Int'l*, [1996] 2 All ER 433, [1996] 1 BCLC 428, [1996] BCC 486. Additionally, the Court reviewed the more recent case of *VTB Capital plc v. Nutritek Int'l Corp.*, [2013] UKSC 5, which was decided since *Tyson* and cited by defendants. Plaintiff has cited no additional English authority.

pled sufficient facts with respect to UTS, and therefore the claims against UTS must be dismissed.

1. Misuse of the Corporation

Viewed in a light most favorable to plaintiff, the complaint alleges that the various corporate forms among the defendants are a façade, but that allegation is simply a starting point under English law. It is also necessary to allege that defendants misused the corporate façade "to avoid or conceal liability." *Tyson*, 433 B.R. at 87 (quoting *Hashem*, [2008] EWHC 2380 [¶ 162]).

With respect to UTS, the complaint contains no allegation that Lin or iTV Media used UTS at all, much less misused it. At most, plaintiff alleges that UTS owned a controlling interest in iTV Media, but the superior position of one entity over another does not, by itself, justify piercing the corporate veil under English law. *See Great Lakes Overseas, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 990 F.2d 990, 997 (7th Cir. 1993) (considering *Atlas Maritime Co. v. Avalon Maritime Ltd.,* 4 All E.R. 769 (C.A. 1991) to represent the state of English law, and noting that *Atlas Maritime* "found no justification for piercing the corporate veil to hold a parent company responsible for the debts of its wholly owned subsidiary, even where the subsidiary was created to conduct the business at issue and was funded entirely by loans advanced by the parent."). The complaint does not allege the *use* of UTS by any defendant, and thus the complaint fails to meet the first principle of English veil-piercing law.

In contrast, the allegations concerning iTV(HK) and iTV.cn suggest that those entities were part of a façade constructed by Lin to avoid his liability for plaintiff's

wages and other compensation. The complaint alleges that there is a fluid relationship among all iTV entities, with Lin in control of each. (Am. Compl. ¶¶ 64-69.) According to the complaint, Lin's contract with plaintiff was on behalf of iTV Media, yet at Lin's behest, "iTV HK acts as the funding conduit for the iTV Group." (*Id*. ¶ 68.) When plaintiff complained about being underpaid, Lin suggested that there were funds available from iTV(HK), from which plaintiff would be paid eventually. (*Id.* ¶ 43.) Plaintiff's initial salary, however, was paid through iTV.cn, which the complaint alleges was a newly-established entity created for the purpose of attracting plaintiff to work for Lin and iTV Media, and which Lin subsequently misused by preventing plaintiff's efficient management of it. (*Id*. ¶¶ 21-23, 36, 47-50.) Thus, the complaint sufficiently alleges that Lin and iTV Media misused both entities by relying on them to attract and retain plaintiff, and to under-pay him while attempting to shield iTV Media from liability. (*Id*. ¶ 67.)

Accordingly, plaintiff has satisfied the first principle of English veil-piercing law for iTV(HK) and iTV.cn, but not for UTS.

2. Temporal Requirement

A second and closely-related principle of English law imposes a temporal requirement concerning when the misuse must occur: the wrongdoer must have placed the corporation between himself and his victim *after* incurring liability. *Tyson*, 433 B.R. at 88. English law contains "a clear distinction between a defendant using a corporate structure to 'evade . . . such rights of relief against him as third parties already possess'—conduct for which veil-piercing may apply—and a defendant using a corporate structure to evade 'such rights of relief as third parties may in the future

acquire'—conduct which, good or bad, was thought 'inherent in our corporate law.'" *Id*. (quoting *Adams v. Cape Indus. Plc*, [1990] Ch. at 544); *see also Optimal*, 2011 WL 4908745 at *7 ("[T]o pierce the corporate veil a defendant must have already incurred a liability and then set up a fraudulent shell entity to avoid that liability.").

There is no allegation against UTS which satisfies the temporal requirement: it is clear that UTS was formed well *before* the alleged wrongdoing (Compl. ¶ 14), and it does not appear that UTS played any role afterward. On this ground alone, the claims against UTS must be dismissed.

Again, the Court reaches the opposite conclusion with respect to iTV(HK) and iTV.cn. Although iTV(HK) appears to have existed before plaintiff joined iTV Media, viewing the complaint in a light most favorable to plaintiff, it alleges that, after incurring liability to plaintiff for compensation, Lin deprived iTV.cn of the money to pay plaintiff by keeping the money in iTV(HK). (Compl. ¶¶ 43, 68.) In addition, Lin's alleged statement that the money to pay plaintiff was available through iTV(HK) supports an inference that Lin used iTV(HK) to persuade plaintiff to keep working, even after Lin incurred liability to him for unpaid compensation. (*Id*.)

The allegations concerning iTV.cn also satisfy the temporal requirement, by showing that Lin created iTV.cn to lure plaintiff into the iTV Group based on false promises, and then defraud him. (*Id*. ¶¶ 21-23, 26, 28, 30.) The complaint does not state precisely when iTV.cn was created, but its creation was nonetheless integral to the alleged fraud, and it remained the entity in which plaintiff was employed even after Lin and iTV allegedly defrauded and underpaid him. Therefore, in a light most favorable to

plaintiff, the allegations against iTV.cn meet the temporal requirement.

3. Preference for Individual Fraud Claims

A third principle of English law holds that, "when an individual defendant makes a fraudulent misrepresentation on behalf of a company, that individual defendant need not be held liable through a circuitous veil-piercing theory but rather, may be made to answer for his own tort." *Id*. at 90 (citing *Std. Chartered Bank v. Pak. Nat'l Shipping Corp.*, [2002] UKHL 43 [¶¶ 20–22], [2003] 1 A.C. 959, 968–69 (H.L.)).

The cases cited in *Tyson* differ to the extent that they involve only one corporate entity and one individual defendant, typically in an agency relationship, which may present a weaker case for veil-piercing because the corporation is merely associated with the alleged wrongdoing, rather than a means of its accomplishment. Here, in contrast, the allegations involve an individual actively managing multiple entities in order to gain the benefit of plaintiff's labor while shielding himself of the liability for his compensation, and under these circumstances, piercing the veil of the entities directly involved is not "circuitous." This is true with respect to iTV(HK) and iTV.cn, for the reasons discussed above, but not for UTS, because plaintiff has not alleged facts sufficient to bring UTS within the alleged fraud.

In sum, all three principles of English law support the conclusion at this stage, based upon the allegations in the complaint, that iTV(HK) and iTV.cn are alter egos of iTV Media.[7] Plaintiff has not alleged facts

---

[7] This conclusion moots the argument by Lin and the iTV Group that iTV.cn cannot be held liable for breach of contract because it was not a party to

sufficient for the Court to reach the same conclusion with respect to UTS.[8] Therefore, the claims against UTS are dismissed.

C. Duplicative Causes of Action

Defendants argue that the unjust enrichment and good faith and fair dealing counts are duplicative of plaintiff's breach of contract claim, but that argument is premature at this stage. "[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of

---

plaintiff's employment contract. *Accord D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198-99 (2d Cir. 2005) (piercing corporate veil in a breach of contract case under New York law where one owner controlled multiple corporations and used them interchangeably, and noting that "in such circumstances, courts may appropriately pierce corporate veils to ensure that a plaintiff can seek relief against the whole entity with whom it reasonably thought it had contracted"). Likewise, at this stage, the Court need not reach plaintiff's alternative arguments for enforcing the contract against iTV.cn.

[8] A related question, not briefed by plaintiff but presented by UTS, is whether UTS could be held liable as an alter ego of iTV.cn, which is incorporated in Delaware. "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc. L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). In order to state a claim, plaintiff must allege facts demonstrating such "exclusive dominion and control" by one entity over the other that the controlled entity "no longer ha[s] legal or independent significance of [its] own." *Id*. at 1183-84 (quotation and citation omitted). The allegations must also suggest that the controlled entity is a "sham" existing "for no other purpose than as a vehicle for fraud." *Id*. at 1184. Plaintiff has simply not alleged that iTV.cn was controlled by UTS or that it was a sham created for the benefit of UTS. At most, plaintiff's allegations about the "sham" nature of iTV.cn link it to Lin and iTV Media, and it would be another step entirely to reach UTS. *See In re The Heritage Org., LLC*, 413 B.R. 438, 514 (N.D. Tex. 2009) (requiring piercing at each level of ownership under Delaware law).

consistency." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).

In this case, whether there is any overlap between these counts will likely depend on whether the written contract covers all aspects of the parties' agreement, which is a disputed question of fact. *See Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 39-40 (S.D.N.Y. 1991) (denying motion to dismiss where parties disputed nature and extent of contract). In particular, the unjust enrichment count is based on the theory that plaintiff was forced to provide "Extra-Contractual Services" (Am. Compl. ¶ 95), and the good faith and fair dealing count seeks an alternative ground for recovery even if plaintiff's termination did not violate the employment contract (*id*. ¶ 118). Therefore, the counts are not duplicative at this stage.

D. Fraud, Negligent Misrepresentation

Defendants argue that the fraud and negligent misrepresentation counts fail to state claims because they are based on statements of future intent. Here, the alleged statements are Lin's promises that iTV Media would hold an IPO within one year, making stock options more attractive to plaintiff.

"Where a cause of action for fraud is based on a defendant's statement of future intention . . . plaintiff must show that the defendant, at the time the promissory representation was made, never intended to honor or act on his statement." *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 596 (E.D.N.Y. 2000). To show intent, "plaintiff[] must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). "The requisite 'strong inference' of fraud may be

established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

In a light most favorable to him, plaintiff's complaint sufficiently alleges that Lin and iTV Media had the motive to hire plaintiff through fraud because they valued his experience, and that they had the opportunity to commit fraud while making promises about the IPO during negotiations over plaintiff's compensation. (Am. Compl. ¶¶ 25-28.) Additionally, plaintiff's allegation that defendants severely underpaid him from the beginning, and never acknowledged the promised stock options, supports an inference that defendants' intention all along was to defraud plaintiff.

Although the complaint sufficiently alleges fraud, it fails to state a claim for negligent misrepresentation. That count is supported by the same promise of an IPO, but "representations about future events . . . cannot support a claim for negligent misrepresentation." *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 21 (2d Cir. 2000). Instead, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Id.*; *see also Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987) ("Murray's efforts to frame broken promises into misrepresentations of present facts are fruitless."); *Margrove Inc. v. Lincoln First Bank of Rochester*, 388 N.Y.S.2d 958, 960 (N.Y. App. Div. 1976) ("The mere failure of defendant to abide by its commitment cannot be made the basis of an action in tort

for misrepresentation."). Therefore, the negligent misrepresentation claim is dismissed.

### E. Intentional Infliction of Emotional Distress

The complaint also alleges that Lin's outbursts and threats of retaliation in the workplace were an intentional infliction of emotional distress suffered by plaintiff. In order to assert a valid claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)).

New York "sets a high threshold for conduct that is 'extreme and outrageous.'" *Id.* The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). "[S]atisfying the 'outrageousness' element is difficult, even at the pleadings stage." *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, No. 06-CV-0672, 2007 WL 121431, at *6 (E.D.N.Y. Jan. 12, 2007); *see also Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ("Whether the conduct alleged may reasonably be regarded as so extreme and outrageous to permit recovery is a matter for the court to determine in the first instance.").

The complaint does not set forth allegations that give rise to a plausible claim of "extreme and outrageous conduct," as that term is defined under New York law for purposes of this claim. It alleges that Lin accused employees of "fictitious offenses," insulted those who complained about unpaid salaries, and threatened to retaliate against plaintiff by terminating his employment. (Am. Compl. ¶ 38.) Lin also allegedly told plaintiff that he was "worse than a peddler on the street," which the complaint states is offensive within Chinese culture, though to what degree and effect is not stated. (*Id.* ¶ 46.) Thus, even viewed in a light most favorable to plaintiff, these allegations describe behavior that is offensive and unprofessional, but not beyond all bounds of decency or intolerable in a civilized society. *Cf. Kirwin v. N.Y. State Office of Mental Health*, 665 F. Supp. 1034, 1040 (E.D.N.Y. 1987) (dismissing claims based on "insults, indignities, annoyances, and petty oppressions" including a "veritable campaign of harassment"); *Russo-Lubrano*, 2007 WL 121431 at *6-7 (collecting cases).

Although plaintiff relies for support on this Court's decision in *Hamlett v. Santander Consumer USA Inc.*, the allegations in that case were far more severe: the complaint described 9,500 calls from a debt collector over an 11-month span, and threats of physical arrest that led the plaintiff to require medication. 931 F. Supp. 2d 451, 454 (E.D.N.Y. 2013). Here, the allegations are both less specific and less extreme. Furthermore, this case is distinguished from *Hamlett* by the fact that plaintiff's allegations arose in the employment context, where "New York courts are exceedingly wary of claims for intentional infliction of emotional distress . . . because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a

wrongful discharge claim under a different name." *Mariani v. Consol. Edison Co. of N.Y., Inc.*, 982 F. Supp. 267, 275 (S.D.N.Y. 1997) (collecting cases); *see also Stuto*, 164 F.3d at 827 ("[S]everal New York courts have dismissed cases involving acts of coercion and misrepresentation related to employment or disability decisions on the ground that such conduct was not extreme or outrageous"); *Galanis v. Harmonie Club of The City of New York*, No. 13 Civ. 4344 (LTS)(AJP), 2014 WL 101670, at *9 (S.D.N.Y. Jan. 10, 2014) ("[A]bsent a claim of sex discrimination, battery, or sexual harassment, New York courts generally will not find intentional infliction of emotional distress in the employment discrimination context."); *Wahlstrom v. Metro-North Commuter R. Co.*, 89 F. Supp. 2d 506, 529-30 (S.D.N.Y. 2000) (collecting cases). Therefore, the Court concludes that *Hamlett* is inapposite, and that the complaint does not state a claim for intentional infliction of emotional distress under New York law, although plaintiff is granted leave to re-plead this count in the amended complaint.

### F.  Punitive Damages

Lin and the iTV Group also argue that any claim for punitive damages must be dismissed because the complaint does not contain allegations that would allow for punitive damages in a case involving claims of fraud and breach of contract in the context of a private commercial contract. As set forth below, the Court agrees.

As a general rule, punitive damages are unavailable in ordinary contract actions; rather, they are recoverable in such cases only if aimed at the public generally and, thus, necessary to vindicate a public right. *See TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 93-94 (2d Cir. 2005). This rule also applies to fraud claims

contained within cases involving commercial disputes between private parties.  In particular, the New York Court of Appeals has held that plaintiffs may recover punitive damages in the commercial context only upon a showing, *inter alia*, that the wrongdoing was "aimed at the public generally, is gross and involves high moral culpability." *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961).  Thus, it is well settled that "[w]here, as here, a fraud claim is related to a breach of contract claim, punitive damages are available only if: '(1) defendant's conduct is actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in [*Walker*, 10 N.Y.2d at 404-05]; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally.'" *Carling v. Peters*, 10 civ. 4573 (PAE) (HBP), 2013 WL 865822, at *8 (S.D.N.Y. Feb. 6, 2013) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995)).  If the complaint fails to allege sufficient facts to support a plausible claim for punitive damages, it can be dismissed as a matter of law under Rule 12(b)(6). *See, e.g.*, *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 130 (2d Cir. 2001) (affirming dismissal of punitive damages claim under Rule 12(b)(6) for failure to allege any facts, in a breach of contract action, regarding conduct aimed at the public generally).

Even viewing the complaint in a light most favorable to plaintiff, it fails to allege any facts to support an inference that the alleged conduct by Lin and iTV Media was aimed at the public generally.  Thus, based upon the current allegations, no claim for punitive damages can exist as a matter of law with respect to any of the remaining claims in this case.   However, in an abundance of caution, the Court will grant leave to re-plead to give plaintiff an

opportunity to correct, if possible, this pleading deficiency.

### G. Leave to Amend

As discussed *supra* at note 2, plaintiff's counsel requested during oral argument to amend the complaint to include additional allegations in support of the argument that UTS is an alter ego of iTV Media. That request is granted.

In his opposition to this motion, plaintiff also requested leave to amend any dismissed counts against Lin and the iTV Group. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). The Court has dismissed the negligent misrepresentation and intentional infliction of emotional distress counts, as well as the claim for punitive damages, and grants leave to amend except as to the negligent misrepresentation claim. If plaintiff is aware of facts sufficient to state a claim for intentional infliction of emotional distress and/or a claim for punitive damages, he may include them in the amended complaint.

Amending the negligent misrepresentation count would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility."). An amendment is considered futile if it could not defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction. *See Riccuiti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996). Thus, "whether considered in the context of a motion to dismiss or opposition to a motion for leave to amend, the viability of a claim is evaluated by the same legal standard." *K.R. ex rel. Perez v. Silverman*, No. 08-CV-2192 (RJD)(SMG), 2009 WL 2959580, at *3 (E.D.N.Y. Aug. 13, 2009).

The negligent misrepresentation count is deficient not because of a shortage of factual allegations, but due to its basic substance: broken promises and representations of future events are simply not actionable under a negligent misrepresentation theory. Additional pleading will not cure the negligent misrepresentation count, and leave to amend it is therefore denied. *Accord Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.").

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss brought by UTS is granted, but plaintiff is granted leave to amend the complaint to include allegations showing that UTS is an alter ego of iTV Media. The motion to dismiss by Lin and the iTV Group is granted with respect to the negligent misrepresentation and intentional infliction of emotional distress claims, and the claim for punitive damages, and is otherwise denied. Plaintiff is granted leave to amend the complaint with respect to the intentional infliction of emotional distress count and/or a claim for punitive damages, and shall file the amended complaint no later than thirty days after the date of this order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 8, 2014
        Central Islip, NY

\* \* \*

Plaintiff is represented by Eugene Meyers, Dacheng Law Offices, 2 Wall Street, 21st Floor, New York, NY 10005. Defendants Lin and the iTV Group are represented by Donald F. Schneider, Silverman Sclar Shin & Byrne PLLC, 381 Park Avenue South, New York, NY 10016. Defendant UTS is represented by Charles A. Michael, Brune & Richard LLP, One Battery Park Plaza, 34th Floor, New York, NY 10004.