UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TIANBO HUANG,

                 Plaintiff,

     -against-

ITV MEDIA, INC., ITV MEDIA (HONG
KONG), LTD., ITV.CN, INC. and SONG
LIN, an individual,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND
ORDER**
13-CV-3439 (JFB)(SIL)

**LOCKE, Magistrate Judge:**

       Presently before the Court is Plaintiff Tianbo Huang's ("Huang" or "Plaintiff")

Motion to Compel Defendants iTV Media Inc. ("iTV Media"), iTV Media (Hong Kong),

Ltd. ("iTV HK"), iTV.CN, Inc. ("iTV.CN"), and Song Lin ("Lin" and collectively,

"Defendants") to produce documents responsive to Plaintiff's Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 34(a) requests. *See* Notice of Motion ("Notice of Motion"),

Docket Entry ("DE") [74]. Specifically, Plaintiff seeks to compel Defendants to

produce documents held by non-party iTV Media Technology (Beijing) Ltd. ("iTV

Beijing" or the "Non-Party"), a wholly owned subsidiary of iTV HK (which is wholly

owned by iTV Media) and a sister corporation of iTV.CN. *See* Memorandum of Law

in Support of Defendants' Motion to Compel Pursuant to Fed. R. Civ. P. 37 ("Pl.'s

Mem. Law"), DE [74-1], at 14. Huang also seeks sanctions pursuant to Fed. R. Civ.

P. 37 in connection with his motion. *See* Notice of Motion. Defendants oppose

Plaintiff's motion in its entirety. *See* Memorandum of Law in Opposition to Plaintiff's

Motion to Compel Pursuant to Fed. R. Civ. P. 37 ("Def.'s Mem. Law"), DE [75].

For the reasons set forth herein, the portion of the motion seeking to compel production of documents held by non-party iTV Beijing is **GRANTED** as to all Defendants, but Plaintiff's request for sanctions pursuant to Fed. R. Civ. P. 37 is **DENIED**.  On or before **March 17, 2017**, Defendants shall produce the relevant documents in the possession of iTV Beijing.  A status conference is set for **April 4, 2017 at 10:00 a.m.** in Courtroom 820 of the Central Islip courthouse.

## I.    BACKGROUND

The factual and procedural background of this action is discussed in an April 8, 2014 Memorandum and Order in which the Honorable Joseph F. Bianco granted former Defendant UTStarcom, Inc.'s Motion to Dismiss and granted in part and denied in part Defendants' Motion to Dismiss, and is incorporated herein by reference.  *See* April 8, 2014 Memorandum and Order, DE [34].  Nevertheless, the following facts provide relevant context for the instant motion.

### A. <u>The Parties</u>

Plaintiff Huang is a New York resident who has worked in the internet television industry for over ten years.  *See* Second Amended Complaint ("SAC"), DE [36], ¶ 9.  Defendant iTV Media, incorporated under the laws of the British Virgin Islands with an office in California, is in the media business and operates as a holding company, wholly owning Defendant iTV HK, a company based in and organized under the laws of Hong Kong.  *Id.* at ¶¶ 1, 3; *see* Def.'s Mem. Law at 3.  iTV HK, also a holding company, wholly owns Defendant iTV.CN, a Delaware corporation with a principal place of business in California, and iTV Beijing, the Non-Party that is the

subject of the current dispute.  *See* Def.'s Mem. Law at 3; SAC ¶ 2.  Individual Defendant Lin is the Chief Executive Officer and a member of the Board of Directors of all the iTV entities, including iTV Beijing.  Def.'s Mem. Law at 3; SAC ¶ 4.  Lin is a citizen of China, but maintains a residence in California.  SAC ¶ 4.

**B. <u>Plaintiff's Claims</u>**

On December 8, 2010, Huang met with Lin and Jingchun "Jason" Sun ("Sun"), Chairman of the Board of iTV Media, in Plainview, New York.  *Id.* at ¶¶ 16, 22.  The purpose of the meeting was to discuss Huang possibly managing iTV.CN, which at the time was a newly established entity.  *Id.* at ¶¶ 22-23.  iTV Media sought to launch an internet based television service platform in the United States under iTV.CN.  *Id.* According to Plaintiff, he was sought after because iTV.CN "critically needed [his] experience, contacts within the industry, and expertise," and he was promised "a stable and promising career."  *Id.* at ¶¶ 23, 24.

After the initial meeting, he met with iTV executives in Beijing, China.  *Id.* at ¶ 26.  During the trip, Huang was offered the position of directing "the global operations of iTV Group, with the exception of China, including directing responsibility for all of the North American operations through a newly-formed U.S. entity, Defendant iTV.CN."  *Id.* at ¶ 27.  He also was offered an annual salary of $300,000, annual performance bonuses, and stock interests in iTV Media equal to 1% of the company.  *Id.* at ¶¶ 27-28.  He further was told that an initial public offering of iTV Media was forthcoming within the year, and that he would be provided "invested stock rights" in that company.  *Id.* at ¶ 26.  Persuaded, he accepted the offer

in April 2011, terminating his then-current employment. *Id.* at ¶ 33. Although working to launch iTV.CN, his position was "Vice President of iTV Media Inc. & President of iTV Media International," and the terms of his employment were memorialized in a written Offer Letter, signed by Lin. *Id.* at Ex. A ("Offer Letter"), DE [36-1], at 1. Huang reported directly to Lin and was based in Melville, New York. *See* Offer Letter; SAC ¶ 37.

Plaintiff's employment with Defendants was not as he had imagined. Despite the Offer Letter describing his duties as leading operations of international businesses outside of China, Huang claims that he was "prevented from doing so by L[in], his direct supervisor, who continued to personally manage international operations, most notably those in Spain and Thailand." *Id.* at ¶ 39. Lin also instructed Plaintiff to ignore copyright restrictions and to not enter into licensing agreements with content copyright owners. *Id.* at ¶ 49. Moreover, according to Huang, he was not timely paid his salary, worked 20-30 hours in excess of his weekly schedule without compensation, and was not awarded any stock interest. *Id.* at ¶¶ 40-41, 43. When he complained to Lin, including that Defendants' conduct violated the New York Labor Law, Lin responded with insulting remarks and threatened termination. *Id.* at ¶¶ 40, 44, 47. In general, Huang describes the environment as a "hostile and intimidating work atmosphere." *Id.* at ¶ 40.

Despite these work conditions, however, Plaintiff worked "diligently" and "iTV Group's business objectives had been significantly advanced by the latter part of

2012."[1]  *Id.* at ¶ 52.  Nevertheless, on November 2, 2012, Huang was terminated.  *Id.* at ¶ 53.  He believes that this was a "result of his continued attempt to secure the benefits promised to him in his [Offer Letter] and his insistence on obtaining legal, albeit more expensive, content for the iTV Group platforms."  *Id.* at ¶ 54.  Although his stock interests vested fully upon termination, he did not, within 30 days of termination, receive any acknowledgement that they vested, nor did he receive overtime pay or his full benefits pursuant to his agreed upon severance package.  *Id.* at ¶¶ 55, 63-64.  Further, even though he was not paid his salary, he was sent an IRS Form W-2 stating that he was paid $342,779.08 in 2012.  *Id.* at ¶ 56.  Plaintiff claims this document was knowingly false and misleading, particularly to "mask and to conceal the iTV Group and L[in]'s fraud and to intentionally inflict upon Plaintiff harm through the creation of a large financial tax burden."  *Id.* at ¶¶ 57, 60.

For this alleged harm, Huang commenced this action on June 14, 2013 against Defendants,[2] subsequently amending the Complaint twice.  *See* Complaint ("Compl."), DE [1]; Amended Complaint ("Am. Compl."), DE [25]; SAC.  He alleges causes of action for breach of contract, unjust enrichment, fraud and deceit, breach of duty of good faith and fair dealing, and failure to maintain records and illegal

---

[1] Plaintiff refers to the iTV Defendants as "iTV Group," *see* Pl.'s Mem. Law at 1, a description Defendants label "fictional."  *See* Def.'s Mem. Law at 15.

[2] UTStarcom, Inc. ("UTStarcom") was an original Defendant in this action, but was voluntarily dismissed by Stipulation of Dismissal dated May 7, 2014.  *See* Stipulation of Dismissal of UTSTARCOM, INC. ("Stip. of Dismissal"), DE [35].  According to a Form 20-F filed by UTStarcom Holdings Corp. ("UTStarcom Holdings"), the parent company of UTStarcom, UTStarcom Holdings owns 49% of iTV Media.  *See* Declaration of Eugene Meyers ("Meyers Decl."), DE [74-2], at Ex. 8 ("UTStarcom Holdings 2014 20-F"), DE [74-10], at 3.

deductions in violation of the New York Labor Law. *See generally* SAC. Defendants answered the SAC on February 13, 2015. *See* DE [53].

## C. **The Current Dispute**

Plaintiff served discovery requests on each Defendant in early 2015.[3] *See* Pl.'s Mem. Law at 6. Defendants generally objected, in part, that the documents were not in their "possession, custody or control." *See* Letter Motion to Compel ("Letter Motion to Compel"), DE [61], at Ex. A ("Defendants' Objections"), DE [61-1], at pp. 3, 13, 21, 32. Although Defendants produced some documents, Huang claims that "the vast majority of the documents bore little relation to the discovery requests" as "no internal correspondence was produced from any of the support staff based in China . . . ." Pl.'s Mem. Law at 6.

As a result, Plaintiff proposed a list of custodians that were likely to possess responsive information, including five based in the United States and five in the iTV Beijing office. *See id.*; Meyers Decl., at Ex. 12 ("ESI Request"), DE [74-14]. According to Huang, the employees of the iTV Beijing office "were responsible for the accounting of the iTV Group operations, the management of the human resources of the iTV Group, the funding and capitalization of the iTV Group and the development and management of iTV Media's stock options offering." Pl.'s Mem. Law at 6. Defendants, however, refused to produce documents of these custodians with the exception of Lin,

---

[3] Plaintiff has not attached its document requests to the current motion. Accordingly, the Court relies on each Defendants' objections to Plaintiff's Requests for the Production of Documents, which were attached to Huang's Letter Motion to Compel filed with this Court on June 4, 2015. *See* Letter Motion to Compel ("Letter Motion to Compel"), DE [61].

explaining that "we stand by our objection to any and all discovery requests for materials maintained by companies or employees of companies not named as defendants in this matter." *See* Meyers Decl. at Ex. 16 ("May 14, 2015 Letter"), DE [74-18]. Moreover, Defendants explained that computers kept at iTV.CN offices in New York were "scrubbed" before they were returned to the company, suggesting that documents held by the United States custodians are out of Defendants' possession. *Id.*

On June 4, 2015 Plaintiff filed a letter motion to compel, citing issues with Defendants': (1) relevancy objections to Huang's discovery requests; (2) objection that they do not have "possession, custody or control over iTV Media subsidiaries;" and (3) refusal to produce documents in response to Plaintiff's ESI request with the exception of documents by Lin, including documents held by iTV Beijing employees. *See* Letter Motion to Compel at 2-3. A hearing was held on this letter motion on July 21, 2015, at which time the Court ruled on Defendants' relevancy objections. *See* July 21, 2015 Minute Order ("July 21, 2015 Minute Order"), DE [68]. Concerning Defendant's refusal to produce documents in control of its subsidiaries and those related to the ESI Request, the Court denied the motion with leave to renew as a motion on notice and after a Fed. R. Civ. P. 30(b)(6) deposition. *Id.*

Huang thereafter took the deposition of Lin as a 30(b)(6) witness, and this motion followed. *See* Meyers Decl. at Ex. 3 ("Lin Dep."). He now seeks an order compelling Defendants to produce all documents responsive to his Fed. R. Civ. P.

34(a) requests, particularly focusing on those documents held by iTV Beijing, and related sanctions. *See* Notice of Motion.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Further, "[t]he party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). It is well-established that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

Rule 34 requires a party to produce all documents in the scope of Rule 26 and within its "possession, custody, or control." *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control . . . ."). The "concept of control" is "highly fact-specific," *Guillory v. Skelly*, No. 12-CV-00847, 2014 WL 4542468, at *7 (W.D.N.Y. Sept. 11, 2014), and is "broadly construed . . . ." *N.Y. ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006) ("The term control in the context of discovery is to be broadly construed. . . . The critical inquiry is whether the party-litigant can exercise custody and control over the documents.").

A party has "control" over documents held by a non-party if it "has the legal right or practical ability to obtain documents from [that] non-party . . . ." *In re Teligent, Inc.*, 358 B.R. 45, 60 (Bankr. S.D.N.Y. 2006); *see also Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997) ("[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."). This rule applies equally even where the non-party is "beyond the jurisdiction of the court." *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986) ("A party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court."); *see*

*also Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) ("The fact that the documents are situated in a foreign country does not bar their discovery."). Finally, the party seeking discovery bears the burden "to make a showing that the other party has control over the materials sought." *Dietrich v. Bauer*, No. 95 CIV. 7051, 2000 WL 1171132, at *4 (S.D.N.Y. Aug. 16, 2000), *on reconsideration in part,* 198 F.R.D. 397 (S.D.N.Y. 2001).

## III. MOTION TO COMPEL

With these standards in mind, the Court turns to Huang's Motion to Compel. Specifically, Plaintiff seeks an order from this Court that "defendants must produce responsive documents within the custody of iTV Beijing employees." Pl.'s Mem. Law at 14. The Court is mindful that the Non-Party has a different relationship with each of the Defendants—iTV Media and iTV HK are holding companies and parent corporations, iTV.CN is a sister corporation, and Lin is an individual who is the Chief Executive Officer of iTV Beijing. As such, the Court analyzes whether each of these Defendants, based on their relationship to the Non-Party, exercise the requisite control over iTV Beijing such that they must be compelled to produce documents in the Non-Party's possession.

### A. <u>Parent-Subsidiary Relationship: iTV Media and iTV HK</u>

In analyzing "control" in the context of a parent-subsidiary relationship, Courts focus on four factors: "the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operate as one, demonstrated access to documents in the ordinary course of business, and an agency

relationship." *DeSmeth v. Samsung Am., Inc.*, No. 92 CIV. 3710, 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998); *see also Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991) ("Evidence considered by the courts includes the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship."). Similar to the legal standard set forth above, "[w]hen determining the sufficiency of 'custody and control' of material for purposes of Fed.R.Civ.P. 34, the nature of the relationship between the party and nonparty corporations is the key." *PCI Parfums et Cosmetiques Int'l v. Perfumania, Inc.*, No. 93 CIV. 9009, 1998 WL 646635, at *2 (S.D.N.Y. Sept. 21, 1998); *see also Doe Run Peru S.R.L. v. Trafigura AG*, No. 3:11, 2011 WL 13059042, at *1 (D. Conn. Aug. 24, 2011) ("Whether a subpoenaed domestic corporation can be compelled to produce documents held by its foreign parent or subsidiary turns on the nature of the relationship between the entities."). Below, the Court focuses on the relevant four factors in determining whether iTV Media and iTV HK exercise control over iTV Beijing for the purposes of discovery.

1. Ownership and Control

At the outset, the Court recognizes that iTV HK's full ownership of iTV Beijing heavily weighs in favor of a finding of ownership and control. *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls."); *In re Ski Train Fire of Nov. 11, 2000*

11

*Kaprun Austria*, No. MDL 1428, 2006 WL 1328259, at *6 (S.D.N.Y. May 16, 2006) (finding that the factor of ownership and control "tips in Plaintiffs' favor" due to a parent-subsidiary relationship); *Dietrich*, 2000 WL 1171132, at *3 ("Numerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with that subsidiary.").  This finding further extends to iTV Media, which wholly owns iTV HK, as "[t]his principle applies where the subsidiary is not owned directly but, rather, is owned by an intermediate corporation that is itself a wholly-owned corporation of the parent corporation."  *Dietrich*, 2000 WL 1171132, at *3; *see also Lethbridge v. British Aerospace PLC*, No. 89 CIV. 1407, 1990 WL 194915, at *1 (S.D.N.Y. Nov. 28, 1990) ("Furthermore, even if INC were not itself a party to this action, it is a wholly-owned subsidiary of British Aerospace Holdings Inc. [], which in turn is a wholly-owned subsidiary of PLC, and PLC would therefore be obligated to disclose documents and information held by INC.").

The Court is cognizant, however, that "[m]ere ownership by a parent . . . is not a decisive factor, but merely one factor among several."  *Sicav v. Wang*, No. 12 CIV. 6682, 2014 WL 2624753, at *5 (S.D.N.Y. June 12, 2014).  Even so, Plaintiff proffers several other examples of "control."  For example, Lin testified that iTV Media directed iTV Beijing to handle services on its behalf, including assigning the Non-Party's human resources department to handle Huang's payroll and compensation.  *See* Lin Dep. at 49-50.  Indeed, Lin testified that the human resources work related to Plaintiff was "[n]ot the first" time that iTV Beijing performed "services" on behalf

of iTV Media. *See id.* at 51:1-12. Moreover, Huang provides two resolutions of the Board of Directors of iTV Media, one where it directs iTV Beijing to enter into a joint venture with another company, and another where the Board adopted that iTV Beijing would take out a loan from a lender. *See* Meyers Decl. Ex. 17 ("May 6, 2011 Resolution"); Ex. 19 ("December 23, 2011 Resolution"). Finally, control is also suggested through common leadership, as Defendant Lin is the Chief Executive Officer of iTV Media, iTV HK, and iTV Beijing, and testified that the general managers of all entities report to him. *See* Def.'s Mem. Law at 3; Lin Dep. at 17-18, 76:23-25, 77:1-3. Thus, although Defendants argue that each iTV subsidiary has its own corporate structure and "independent decision-making process," *see* Def.'s Mem. Law at 9, that the parent corporations and subsidiary all share the same CEO and directed iTV Beijing to perform tasks on its behalf weigh in favor of a finding of control. *See DeSmeth*, 1998 WL 74297, at *9 (giving weight to that a parent and subsidiary share the same senior vice president).

2. Operation as One

Turning to the second factor, Huang has met his burden of showing that the parents and subsidiary operate as one entity. Although Defendants argue that iTV Media and iTV HK are holding companies "which do not have employees beyond their executives," Lin also testified that iTV Beijing shares the same CEO, financial controller, and chief operating officer with iTV Media, and that the legal affairs manager of both iTV Media and iTV HK works for iTV Beijing on "a case-by-case basis." *See* Lin Dep. at 93, 102, 103, 133; Def.'s Mem. Law at 11. In addition to

13

similar employees, according to the March 28, 2012 Minutes of the Board of Directors of iTV Media, iTV Beijing had certain "managing functions over other offices in day-to-day global operation especially at finance and HR aspects . . . ."[4] *See* Meyers Decl. at Ex. 4 ("March 28, 2012 Minutes"), DE [74-6], at 1350. Finally, Kelly Tsang ("Tsang"), who worked as an accountant for iTV.CN, explained that the budget was controlled by the Beijing office. *See* Meyers Decl. at Ex. 13, Deposition of Kelly Tsang ("Tsang Dep."), DE [74-15], at 23-25. Although Tsang worked for iTV.CN, iTV Beijing's sister corporation, she explained that "everything is controlled by the Beijing office" and that "[t]heir main office is there," suggesting that iTV Beijing controlled the budget for all the iTV entities. *See* Tsang Dep. at 25:1-6.

Defendants argue that the entities never operated as one unit because they serve different purposes, and have separate boards, independent structures, and no direct management by the corporate parent. Def.'s Mem. Law at 11. However, taking a pragmatic approach to the issue of control, the Court finds the facts as set forth above, particularly those regarding shared employees, establish that the parent corporations and subsidiary operated as one unit. *See Motorola Credit Corp. v. Uzan*, No. 02 CIV. 666, 2013 WL 6098388, at *3 (S.D.N.Y. Nov. 20, 2013) ("This pragmatic approach to understanding 'control' will often result in a finding that a parent corporation has, practically speaking, sufficient control over its subsidiaries to

---

[4] As Defendants point out, the minutes also reflect that the Board of Directors did not want iTV Beijing to have these management functions because it was "structured for local operation" and that they sought to "position[] [the] Beijing office as the China headquarter [*sic*] with emerging projects in China instead of global headquarter [*sic*]." *See* March 28, 2012 Minutes at 1350. This, however, supports the Court's finding that the iTV entities had operated as one insomuch as it provided support where no other was available.

require that it search them in compliance with a subpoena served on the parent."); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 CIV. 5571, 2009 WL 8588405, at *4 (S.D.N.Y. July 10, 2009) (reasoning that a parent and wholly owned subsidiary "could be said to be operating as one entity if they shared employees, shared facilities, shared office space and utilized common practice and forms.").

### 3. Access to Documents

Regarding the third factor, Courts have found that "'[a]ccess' and 'ability to obtain documents' have been found where 'documents ordinarily flow freely between' parent and subsidiary." *See Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 141 (E.D.N.Y. 2009) (quoting *Hunter Douglas, Inc. v. Comfortex Corp.,* No. CIV. A. M8–85, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999)). The record before the Court satisfies this standard. For example, Lin described that he, as CEO of iTV Media, "assigned" the human resources department at iTV Beijing to handle Plaintiff's employment, including setting up payroll, the Offer Letter, and processing paperwork, and explained that the iTV Beijing office would "share with [him] the paperwork." *See* Lin Dep. at 39-41. Also, former Chief Financial Officer of iTV Media, Richard Abbott ("Abbott"), testified that employee incentive plans were created "at the parent company," and that an employee would be provided with a form regarding the granting of restricted stock, which was signed by "acting general counsel out of Beijing." *See* Meyers Decl. at Ex. 14, Deposition of Richard Abbott ("Abbott Dep."), DE [74-16], at 15-17. Other evidence of shared documents presented by Plaintiff includes "iTV HK's payment agent's bank account information from Lin to iTV

Beijing staff" and an e-mail summarizing payments to Huang sent from iTV Beijing to iTV Media. *See* Pl.'s Mem. Law at 14 (citing Lin Dep. at 51-54; Abbott Dep. at 109-111).

Defendants contest these examples provided by Huang, arguing that they are "corporate" documents insomuch as they were prepared by an iTV employee through a "charge back system," or that iTV Beijing performed them for a fee. *See* Def.'s Mem. Law at 19. For a majority of the examples, however, Defendants do not cite to any evidence demonstrating that the parent companies charged iTV Beijing for the services completed. *See id.* Defendants do, however, cite to a portion of Lin's testimony where he states that iTV Beijing charged iTV Media for the work it completed in connection with processing Huang's employment papers and setting up his payroll. *See id.*; Lin Dep. at 49. Lin, however, also explained that as CEO of iTV Media, he "assigned" iTV Beijing to handle the case due to a "limited staffing team," that the Non-Party "shared" the relevant paperwork with him, and that, in general when Huang began, iTV Beijing would "help out" until a proper "charge-back" process was set up. Lin Dep. at 39:9-12; 40:19-25; 74:12-16. This language suggests that not all of iTV Beijing's activities on behalf of the parent corporations were done for a fee, and, as such, Defendants "may not hold themselves out as united for some purposes, but unconnected for others." *DeSmeth*, 1998 WL 74297, at *10.

The Court is also not persuaded by Defendants that this case is similar to *In re Vivendi*, where the Court found that a parent did not have access to its subsidiary's documents. There, individual plaintiffs served a subpoena on Société Générale ("SG")

to produce documents relating to Elektrim Telekomunikacja (the "ET documents"), which SG claimed were in the possession of its wholly owned subsidiary. 2009 WL 8588405, at *1. In attempting to show access to documents, the individual defendants only showed a sharing between SG and the subsidiary of financial statements, which the Court found insufficient as that did "not demonstrate access to the ET documents." *Id.* at *4. Here, however, Plaintiff not only cites to the sharing of financial reports amongst the iTV entities, but also points to other evidence suggesting that iTV Beijing and the parent companies shared documents, particularly those relating to Plaintiff's employment which bear upon the claims in this litigation. *See* Pl.'s Mem. Law at 13.[5] As Huang has shown significantly more than the plaintiffs in *In re Vivendi*, that case does not call for denial of Plaintiff's Motion to Compel.

### 4. Agency Relationship

Finally, the Court turns to the fourth factor, whether there is an agency relationship between the parent and subsidiary. "[T]o establish a parent's agency relationship with a subsidiary, traditional agency principles apply and there must be 'facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent.'" *Harte v. Ocwen Fin. Corp.*, No.

---

[5] Plaintiff also attaches filings with the Securities Exchange Commission by UTStarcom Holdings, which reference the corporate structure of the iTV entities, and requests that the Court take judicial notice of the filings. *See* Pl.'s Mem. Law at 5, n.3. Defendants dispute the admissibility of these documents, arguing that they are filed by a third-party minority shareholder, and argue that taking judicial notice is improper. *See* Def.'s Mem. Law at 14. The Court does not, however, rely on these filings in determining the motion, as the other evidence in the record is sufficient, and thus does not decide the judicial notice issue.

13CV5410, 2016 WL 1275045, at *4 (E.D.N.Y. Mar. 31, 2016) (quoting *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003)). Here, Huang suggests an agency relationship based on iTV Media's control over iTV Beijing, specifically through actions by the iTV Media Board of Directors and because iTV Media directed that iTV Beijing share its resources with other iTV entities. *See* Pl.'s Mem. Law at 10-11. He does not, however, explain if iTV Beijing agreed to this granting of authority upon it, and thus the Court finds that he has not satisfied his burden of establishing an agency relationship.

Nonetheless, as three out of four factors weigh in favor of Plaintiff, and based upon the totality of the circumstances, including that iTV Beijing is wholly owned by the corporate defendants, and that all entities involved report to the same Chief Executive Officer, the Court finds that Defendants iTV Media and iTV HK exercise the requisite control over the responsive documents held by iTV Beijing. *See In re Ski Train Fire*, 2006 WL 1328259, at *8 ("Viewing the totality of these facts, and in light of the 100% ownership of Siemens Austria by Siemens AG, the Court concludes that the only reasonable conclusion to draw is that if Siemens AG needed the assistance or cooperation of Siemens Austria in a matter of concern to the company, it would receive such assistance, be it in the form of providing documents in Siemens Austria's custody, or otherwise."). Accordingly, Plaintiff's motion to compel is granted as to Defendants iTV Media and iTV HK.

## B. <u>Sister Corporation: iTV.CN</u>

The relationship between iTV.CN and iTV Beijing, both wholly owned by iTV HK and thus "sister corporations," demands a different analysis. Fewer cases analyze whether a litigating party should be compelled to produce documents held by its foreign sister corporation. Some have found the necessary control "where the sister corporation was found to be the alter ego of the litigating entity . . . or where the litigating corporation had acted with its sister in effecting the transaction giving rise to suit and is litigating on its behalf . . . ." *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988); *see also PCI Parfums et Cosmetiques Int'l*, 1998 WL 646635, at *2 (citing same standard). Others, although recognizing that an "[a]lter ego situation may certainly lead to the conclusion that one corporation has control over documents held by the other corporation," have found that "a showing of control has not been limited to alter ego situations . . . ." *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 473 (S.D.N.Y. 2000); *see also Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984) (finding documents held by British affiliate of defendant in defendant's control where they "relate to the planes that defendant works with every day").

The record before the Court reflects that iTV.CN exercises the requisite "control" within the meaning of Fed. R. Civ. P. 34 over the documents held by iTV Beijing. Even though the two entities have different Boards of Directors, they are both wholly owned by the same entity, iTV HK, and share the same Chief Executive Officer, Lin. *See Perini Am., Inc. v. Paper Converting Mach. Co.*, 559 F. Supp. 552,

552 (E.D. Wis. 1983) (finding control where, even though sister companies had different directors, 100% of the stock of one and 99.5% of the other was owned by the same individual). The record also demonstrates a free flow of information between the two sister corporations, including the budget, payroll reports, organization chart, and company policies—such as travel and vacation policies and the employee handbook. *See* Tsang Dep. at 18:10-19 (iTV.CN sends payroll information each week to iTV Beijing financial controller and Plaintiff), 23-25 (budget sent by the Beijing office); Meyers Decl. at Ex. 22, DE [74-24] (sending company policies, including travel policy and employee handbook, and organization chart, from iTV.CN to a human resources employee at iTV Beijing), Ex. 24, DE [74-26] (email chain including Plaintiff and iTV Beijing employees over the budget).

Moreover, based on the testimony of Lin, there appears to be a level of cooperation amongst the two entities. During his deposition, Lin explained that Huang initially borrowed space at the iTV Beijing office for a call center, which irritated the staff in Beijing because he utilized resources before a "proper charge-back" process was in place. Lin Dep. at 73:4-25. In an attempt to smooth over the situation, Lin explained that:

> I said okay, because it's a new process; it's a—you know, Huang is a new manager, and it will take time for him to set up everything. So, you know, as the sister company, we just help out, you know until a proper team setup here and also proper financials, including the charge-back of, you know, resources between the companies established.
>
> . . .
>
> So I coordinate between Beijing office and the U.S office to make sure that a proper process can be set up and also some early stage assistance

can be made available to Billy so that he can, you know, grow the business, you know, where we can get over the setup stage as soon as we can.

Lin Dep. at 73-75. The history of "help[ing] out" amongst the entities suggests that iTV Beijing would continue to provide assistance to its sister corporation, either through producing documents or otherwise. Also, as Lin, CEO of all entities involved, "coordinate[d]" this level of cooperation between iTV.CN and iTV Beijing in the past, the Court sees no reason why he could not do so regarding the production of documents in the future.

As such, the Court grants Plaintiff's motion as it pertains to Defendant iTV.CN.

### C. Chief Executive Officer: Lin

Finally, the Court finds that Defendant Lin, as Chief Executive Officer of iTV Beijing, demonstrates sufficient control over the Non-Party to grant Plaintiff's motion. Indeed, "[i]t is well-established that '[a]n individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder.'" *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) (citing *Gen. Envtl. Sci. Corp. v. Horsfall*, 136 F.R.D. 130, 133 (N.D. Ohio 1991)); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) (finding that a former senior executive of a company must produce documents in possession of that company); *In re Teligent, Inc.*, 358 B.R. at 60 (high ranking officer and director must produce documents of corporation). Furthermore, Plaintiff has met his burden of establishing Lin's control

over iTV Beijing, including that he directed iTV Beijing to assist Plaintiff in setting up iTV.CN and instructed iTV Beijing's human resources department to handle processing Plaintiff's initial employment matters. *See* Pl.'s Mem. Law at 11; Lin Dep. at 39, 73-75. Accordingly, Plaintiff's motion to compel is also granted as to Lin.

## IV.     SANCTIONS

Finally, the Court addresses the portion of Huang's motion requesting "appropriate sanctions, including the payment of expenses incurred by plaintiff in preparing this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A)." *See* Pl.'s Mem. Law at 2. According to Fed. R. Civ. P. 37(a)(5)(A), if a motion to compel is granted,

> [T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii)   other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). Here, particularly in light of the fact that the Court could not decipher Plaintiff's original Letter Motion to Compel until it was filed as a fully briefed Motion on Notice and upon a 30(b)(6) deposition, the Court finds that Defendants' nondisclosure was subject to reasonable dispute and thus substantially justified. *See Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) ("Instead, conduct is substantially justified if there was a genuine

dispute or if reasonable people could differ as to the appropriateness of the contested action.") (internal quotation marks omitted). Accordingly, and as Plaintiff does not argue otherwise, the portion of the Motion to Compel requesting sanctions is denied.

## V. CONCLUSION

For the reasons set forth above, the portion of the motion seeking to compel production of documents held by non-party iTV Beijing is **GRANTED** as to all Defendants, but the portion seeking sanctions is **DENIED**. On or before **March 17, 2017**, Defendants shall produce the relevant documents in the possession of iTV Beijing. A status conference is set for **April 4, 2017 at 10:00 a.m.** in Courtroom 820 of the Central Islip courthouse.

Dated: Central Islip, New York
　　　　February 22, 2017

**SO ORDERED**

　　/s Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge